# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                                **CASE NO: 8:16-CR-19-T-35TBM**

**JORGE ALEXIS GRUESO CALZADA**
_____/

## SENTENCING MEMORANDUM IN SUPPORT OF
## A MINOR ROLE REDUCTION AND/OR A
## DOWNWARD VARIANCE PURSUANT TO 18 U.S.C. §3553(a)

COMES NOW, the Defendant, JORGE ALEXIS GRUESO CALZADA, by and through undersigned counsel and pursuant to U.S.S.G. §3B1.2 and 18 U.S.C. §3553(a), hereby files this Sentencing Memorandum in support of his previously-lodged minor role objection and in further support of a reasonable sentence, which is not greater than necessary to accomplish the purposes of sentencing enumerated in 18 U.S.C. §3553(a)(2). As grounds in support thereof, Mr. Calzada shows as follows:

## FACTUAL AND PROCEDURAL HISTORY

Mr. Calzada is a Columbian national who was born on January 26, 1991, in Tumaco. PSR - Initial ¶34. Mr. Calzada has five paternal half-siblings and two maternal half-siblings. PSR - Initial ¶¶37-43. His childhood years were spent in a rural area, and his home had no running water or electricity. PSR - Initial ¶34. Mr.

Calzada recalls having access to clean water only from a common well and the family did not have indoor plumbing for bathrooms. *Id*. Mr. Calzada's father abandoned him when he was a young child, and Jorge cannot remember him ever playing an active role in his life. PSR - Initial ¶35. Thus, Mr. Calzada spent a portion of his childhood living with his grandparents because his mother was unable to afford to raise Jorge on her own. PSR - Initial ¶34. Even so, Mr. Calzada and his mother are close. PSR - Initial ¶36. She is currently suffering from medical issues and concerned about when she will see her son. *Id*. She was shocked about the instant offense and reported that Mr. Calzada was a loving and peaceful man who did not get into trouble in Columbia. PSR - Initial ¶50. Mr. Calzada's half-siblings now reside in Ecuador as well as Columbia and he maintains a good relationship with them all. PSR - Initial ¶P37-44. Mr. Calzada has been able to maintain contact with his mother and maternal half-siblings while in custody, but not his paternal half-siblings. PSR - Initial ¶44. His family is extremely supportive.

Despite his family's poverty, Mr. Calzada was fortunate to graduate from high school. PSR - Initial ¶58. He desired to get a college education, but could not afford to do so. *Id*. After graduating from high school, Mr. Calzada joined the army where he received a medal for good conduct and a letter of recommendation due to his exemplary service. PSR - Initial ¶61. He went on to work as an air conditioner repairman, waiter, and fisherman. PSR - Initial ¶62. Now that he faces years in

federal prison he hopes to utilize the time to continue bettering himself through any vocational-educational programs, including electrical engineering, computer electronics, barbering, and English-language proficiency courses. PSR - Initial ¶60.

As an adult living on approximately $280 per month, Mr. Calzada has struggled to support his two daughters (aged four and one). PSR - Initial ¶¶46-47. Mr. Calzada's four year old daughter suffers from some medical issues with her lungs requiring treatment. PSR - Initial ¶46. He is eager to acquire a job in Columbia or Ecuador with the new vocational skills he gains in prison, to avoid future criminal temptations, and to reunite with his children and mother as soon as possible. PSR - Initial ¶49.

As with so many of the Columbiana and Ecuadorian defendants, Mr. Calzada's difficult financial circumstances formed the backdrop for his involvement in the present case. Specifically, Mr. Calzada has known one of the co-defendants for most of his life, and knew to go to this person when he became desperate for money in late 2015. This co-defendant assisted with getting Mr. Calzada hired, and Jorge was paid $15 million Columbian pesos before the vessel departed (or just around $5,000). Mr. Calzada gave the money to his mother. He expected another $8,000 once the trip was successfully completed. All together Mr. Calzada was expecting to make more on this trip than he could have made working over four years in Columbia or Ecuador as a fisherman. This temptation

was overwhelming to Mr. Calzada. He is extremely remorseful for his conduct and has exhibited true acceptance of responsibility during his incarceration in the United States. PSR - Initial ¶17.

Mr. Calzada knew he would be transporting cocaine during this trip, but he had no knowledge as to the total quantity of cocaine that they were transporting. Mr. Calzada was not the captain or the load guard. Additionally, he has no ownership stake in the cocaine nor was he involved in the organization or planning of the transportation operation. Mr. Calzada's entire role in the transportation operation was to simply act as a "deck hand" to assist others in the transportation of the drugs from point A to point B by way of a go-fast vessel on the open sea.

Unfortunately for Mr. Calzada, on December 27, 2015, the go-fast vessel was spotted by a maritime patrol aircraft approximately 214 nautical miles south of the Guatemalan-Mexican border. PSR - Initial ¶12. The Coast Guard approached the vessel, which never fled, apprehended the vessel, searched the vessel, which had approximately 660 kilograms of cocaine onboard, and detained the three-man crew. PSR - Initial ¶13.

The three crewmembers were brought to the Middle District of Florida and, on January 13, 2016, they were all three charged by Indictment with a Conspiracy to Possess with the Intent to Distribute 5 Kilograms or More of Cocaine While on Board a Vessel Subject to the Jurisdiction of the United States. PSR - Initial ¶¶1-3.

Mr. Calzada immediately accepted responsibility and entered his guilty plea on March 10, 2016, pursuant to a written plea agreement. PSR - Initial ¶5. On March 31, 2016, this Court accepted Mr. Calzada's guilty plea, adjudicated him guilty, and the sentencing hearing is set for Thursday, June 9, 2016. PSR - Initial ¶9.

## GUIDELINE CALCULATIONS

Because Mr. Calzada was involved in a cocaine trafficking conspiracy that involved more than 450 KG, pursuant to U.S.S.G. §2D1.1(c)(1), his base offense level is calculated in the Presentence Report to be a level 38. PSR - Initial ¶19. As a result of his qualification for the "safety value" provision, Mr. Calzada's base offense level is reduced by 2-levels, resulting in an adjusted offense level of 36. PSR - Initial ¶20. With a 3-level reduction for "acceptance of responsibility" it is suggested that the total offense level is 33. PSR - Initial ¶¶26-28. Mr. Calzada has no prior arrests, convictions, or contacts with law enforcement and, as such, is a criminal history category I offender. PSR - Initial ¶¶29-33. With a total offense level of 33 and a criminal history category I, Mr. Calzada's advisory guideline imprisonment range is 135 - 168 months (11 years, 3 months - 14 years). PSR - Initial ¶68. He is facing a mandatory ten years' imprisonment. PSR - Initial ¶67.

In the Presentence Investigation Report, Mr. Calzada is not given any reduction for his role in the offense. PSR - Initial ¶22. He objects to not receiving, pursuant to U.S.S.G. §3B1.2(b), a 2-level minor role reduction and a corresponding

reduction in his base offense level pursuant to U.S.S.G. §2D1.1(a)(5). *See* PSR –

Final, Addendum (not filed yet).

## MINOR ROLE GUIDELINE OBJECTION

U.S.S.G. §3B1.2 provides for either a 4-level minimal role, 2-level minor

role, or a 3-level intermediate role reduction. Specifically, §3B1.2(b) provides for a

2-level reduction if "the defendant was a minor participant in any criminal

activity." The determination whether a defendant should receive a role reduction is

a fact-based determination and is "heavily dependent on the facts of the particular

case." *See* U.S.S.G. §3B1.2 App. N. 3(C). The Application notes provide guidance

on distinguishing between a "minimal" and a "minor" participant. Specifically the

application notes provide that a minimal participant is:

> [A person] who plays a minimal role in concerted activity. It is
> intended to cover defendants who are plainly among the least culpable
> of those involved in the conduct of a group. Under this provision, the
> defendant's lack of knowledge and understanding of the scope and
> structure of the enterprise and of the activities of others is indicative
> of a role as a minimal participant. It is intended that this downward
> adjustment for minimal participant will be used infrequently.

U.S.S.G. § 3B1.2, App. N. 4.

In contrast to a minimal participant, the Application Notes provide that a

minor participant "applies to a defendant . . . who is less culpable than most other

participants, but whose role could not be described as minimal." Additionally, in

contrast to the Commission's observation that a "minimal participant" reduction

should be used infrequently by a sentencing court, there is no such prohibitive language within the description of a "minor" participant. In fact, the Sentencing Commission has recently as part of the November 1, 2015, amendments to the guidelines expressed the opinion that sentencing courts are not granting mitigating role reductions for low-level offenders as much as the Commission had intended. *See* U.S.S.G. Appendix C, amend. 794.

In the present case, Mr. Calzada arguably does not qualify for a minimal role reduction but he does qualify for a minor role reduction because he is "less culpable" than most other participants in the conspiracy to which he has pleaded guilty. He is less culpable than the individual who recruited him to participate in the smuggling operation, the individuals organizing the transportation of the cocaine, the buyers of the cocaine, the sellers of the cocaine, and the drug dealers who will ultimately distribute the cocaine.

In drug cases such as the present case, a role reduction is directly tied to the base offense level determination under U.S.S.G. §2D1.1. Specifically, §2D1.1(a)(5) provides that "if the defendant receives an adjustment under §3B1.2 (Mitigating Role); and (B) the base offense level . . . is (i) 32, decrease by 2 levels; (ii) level 34 or level 36, decrease by 3 levels; or (iii) level 38, decrease by 4 levels." Additionally, the Application Notes to §3B1.2 provide that in drug cases where a defendant's base offense level is determined pursuant to §2D1.1(a)(5), the

Court shall additionally reduce that base offense level based on the defendant's mitigating role, whether that be a 4-level minimal participant, a 2-level minor participant, or a 3-level intermediate participant reduction. *See* U.S.S.G. §3B1.2 App. N. 6.

Over the past 14 years, the Sentencing Commission, out of concern that sentencing courts around the country have been under-applying or misapplying the mitigating role reduction, has attempted to provide sentencing courts added guidance on when it is appropriate to apply the §3B1.2 mitigating role and corresponding §2D1.1(a)(5) base offense reductions. Specifically, on November 1, 2002, Congress and the Sentencing Commission drastically amended U.S.S.G. §2D1.1 to reduce the sentences for low-level drug conspiracy participants by providing that the offense level specified in the Drug Quantity Table should be applied "except that if the defendant receives an adjustment under §3B1.2 (Mitigating Role), the base offense level under [2D1.1] shall not be more than level 30." U.S.S.G. §2D1.1(a)(3), U.S.S.G. Appx. C, Amend. 640. As such, if a drug offender qualifies for either a minimal, minor, or intermediate role reduction, then the highest possible base offense level that the defendant may receive is a level 30. *Id*. The legislative history of this amendment provides that:

> This amendment responds to concerns that the guidelines pertaining to drug offenses do not satisfactorily reflect the culpability of certain offenders . . .

[ ] The amendment modifies §2D1.1(a)(3) to provide a maximum base offense level of 30 if the defendant receives an adjustment under § 3B1.2 (Mitigating Role). *The maximum base offense level somewhat limits the sentencing impact of drug quantity for offenders who perform relatively low level trafficking functions, have little authority in the drug trafficking organization, and have a lower degree of individual culpability (e.g., "mules" or "couriers") whose most serious trafficking function is transporting drugs and who qualify for a mitigating role adjustment).*

This part of the amendment responds to concerns that base offense levels derived from the Drug Quantity Table in §2D1.1 overstates the culpability of certain drug offenders who meet the criteria for a mitigating role adjustment under §3B1.2. The Commission determined that, ordinarily, a maximum base offense level of 30 adequately reflects the culpability of a defendant who qualifies for a mitigating role adjustment.

U.S.S.G. Appx. C, Amend 640 (*emphasis added*).

As noted by the Sentencing Commission as part of the November 1, 2015, amendment to the mitigating role provision, after conducting a recent in-depth national study, the Sentencing Commission found that sentencing courts were still not applying the mitigating role reduction as often as was intended by the Commission. Specifically, the Sentencing Commission noted:

The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended. In drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to drug defendants who perform similar low-level functions (and the rate of application vary widely from district to district). For example, application of mitigating role varies along the southwest boarder, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a

9

high of 97.2 percent in another. Moreover, among drug defendants who do receive mitigating role, there are differences from district to district in application rates of 2-, 3-, and 4-level adjustments.

*See* U.S.S.G. App. C, Amend. 794.

Based on this study's findings, the Commission's clarifying November 1, 2015, amendment to §3B1.2 was created in hopes of fostering a greater application of the mitigating role reduction for defendants who perform relatively low-level functions, such as "mules" and "couriers," for large drug trafficking organizations. *Id.* It is the intent of the Commission by way of the Amendment to address the Commission's observation "that courts often [incorrectly in the eyes of the Commission] deny mitigating role to otherwise eligible defendants if the defendant was considered 'integral' to the successful commission of the offense." *Id.*

In response to the "inconsistent" and "sparse" application of the mitigating role adjustment, the amendment to the guidelines was designed specifically to "provide additional guidance to sentencing courts in determining whether a mitigating role adjustment applies." *Id.* Specifically, the amendment "addresses a circuit split and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances." *Id.* To assist courts and to encourage them to apply the adjustment more frequently, the Commission has provided sentencing courts with "a non-exhaustive list of factors for the court to consider in determining whether an adjustment applies and, if so the amount of the

adjustment." *Id.* Specifically, the Commission's November 1, 2015, factors direct a

sentencing court to consider:

> (i)    the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)   the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii)  the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv)   the nature and the extent of the defendant's participation in the commission of the criminal activity, including acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and
>
> (v)    the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. §3B1.2, App. N. 3(C).

Additionally, and of great significance to the present case, the amendment

further provides that:

> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative.  Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

*Id.*

In the present case, the Commissions' clarifying amendment makes it

abundantly clear that Mr. Calzada should receive a 2-level minor role reduction

and by consequence a 4-level reduction in his base offense level pursuant to

§2D1.1(a)(5)(iii). Factually, Mr. Calzada was hired by a Colombian/Ecuadorian drug trafficking organization to act as a courier by transporting cocaine from Colombia/Ecuador to Mexico while on-board a go-fast vessel. He was to receive financial compensation for transporting the drugs and he had no ownership or proprietary interest in the drugs. To put it simply, he was being paid to perform the limited task of acting as a "deckhand" during the transportation of the drugs from one country to another by way of the open sea.

Mr. Calzada's role in the drug trafficking organization was not that of the seller, buyer, manufacturer, organizer of the transportation operation or even the Captain of the go-fast vessel; he was simply being paid along with other crewmembers to perform the task of assisting in the transporting of a vessel containing cocaine from the sellers to the buyers of the cocaine. He is, in fact, the exact type of low-level participant who should be receiving a mitigating role reduction (*i.e.*, drug courier) that the Sentencing Commission has identified in the 2002 amendment to U.S.S.G. §2D1.1, as well as in the November 2015, amendment to U.S.S.G. §3B1.2. It is clear from the legislative history of these two amendments that low-level transporters of drugs who are working for a larger drug trafficking organization are the specific type of offender the Commission has always intended should receive a minor role reduction and corresponding §2D1.1(a)(5) adjustment in their base offense level.

The fact that a large drug trafficking organization is involved in the distribution of cocaine in amounts larger than the amount of cocaine Mr. Calzada and his indicted co-defendants were apprehended with does not in any way preclude Mr. Calzada from being eligible for a mitigating role reduction. As noted in the Commission's clarifying November 2015, amendment:

> A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under the guidelines. *For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs* and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stores may receive an adjustment under the guidelines."

USSG §3B1.2, App. 3(A) (emphasis added).

Additionally, in analyzing the clarifying, non-exhaustive list of factors in the proposed amendment, it is clear that each and every factor would support Mr. Calzada receiving a mitigating role reduction. As a simple courier or transporter of drugs, Mr. Calzada:

(i)     He had little or no degree of understanding of the scope and structure of the overarching criminal activity; he was simply instructed to assist in the transportation of the cocaine from point A to point B.

(ii)    He had no role in the planning or organization of the criminal activity, including no role in the planning or organization of the transportation operation itself.

(iii)   He had no decision-making authority, nor did he have any influence regarding the exercise of decision-making authority. He simply followed the directions of others.

13

(iv)    The nature and extent of his activity and participation was limited to his assistance with the transportation of packages of cocaine from Columbia/Ecuador to Mexico; he had little or no responsibility or discretion in performing these transportation functions, and at all times during the transportation took direct orders from someone else.

(v)    The only benefit Mr. Calzada was to receive for his transportation function of a single load of cocaine was especially minimal in light of the street value of the drugs he was transporting.

(vi)    He had no proprietary interest in the criminal activity and was simply being paid to perform certain tasks (*i.e.*, assisting in the transportation of drugs).

Therefore, based upon the newly created factors this Court is directed by the Sentencing Commission to specifically consider in determining when to apply a mitigating role reduction pursuant to U.S.S.G. §3B1.2, this Court must find that Mr. Calzada qualifies for a 2-level minor role reduction and must adjust his base and total offense levels accordingly.

## THE ABROGATION OF THE REASONING IN *RODRIGUEZ DE VARON* AND SIMILAR CASES BY THE MITIGATING ROLE AMENDMENT TO THE GUIDELINES

Contrary to what undersigned counsel expects the United States Probation Office's assertions in responding to Mr. Calzada's minor role objection will be in the final Report's Addendum, the Eleventh Circuit opinion in *United States v. De Varon*, 175 F.3d 930 (11th Cir. 1999) should no longer be used by this Court to preclude Mr. Calzada from eligibility for a mitigating role reduction. *See* PSR – Final, Addendum. In fact, it is clear from the legislative history of the November 1,

14

2015, amendment to the mitigating role provision that the Sentencing Commission has abrogated the reasoning in *Rodriguez De Varon*. *See* generally U.S.S.G. Appendix C, Amend. 794. As previously noted after conducting an in-depth national study, the Sentencing Commission enacted the November 1, 2015, version of U.S.S.G. §3B1.2 (Mitigating Role). This change in the guidelines was in response to the Sentencing Commission's findings that sentencing courts were not applying the mitigating role reduction as often as was intended by the Commission. Specifically, the Sentencing Commission noted:

> The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall, the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended.

*Id.*

Based on this study's findings, the Commission's clarifying amendment to §3B1.2 was created in hopes of fostering a greater application of the mitigating role reduction for defendants, such as Mr. Calzada, who perform relatively low-level functions, such as "mules" and "couriers," for large drug trafficking organizations. *Id.* As noted in the legislative history of the amendment, it was the specific intent of the Commission by way of the Amendment to address the Commission's observation "that courts often deny mitigating role to otherwise eligible defendants if the defendant was considered 'integral' to the successful commission of the offense." *Id.* The Eleventh Circuit opinion, in *United States v.*

*Rodriguez De Varon*, 175 F.3d 930 (11th Cir. 1999), although not specifically named by the Sentencing Commission, is one such case that has justified the denial of a mitigating role reduction where the evidence supports a finding that the defendant was "integral" or played an "important" or "essential" role in the transportation of the drugs he or she transported. *Rodriguez De Varon*, at 943 ("Therefore, when a drug courier's relevant conduct is limited to her own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs" justifying a denial of a mitigating role reduction).[1]

The rationale in the *Rodriguez De Varon* opinion, which has now been viewed unfavorably by the Sentencing Commission, has been used exclusively in this District to deny minor role reductions for transporters of large quantities of cocaine while on board a vessel subject to the jurisdiction of the United States. Despite the clear intent of the Sentencing Commission, the Government and the Probation Department are continuing to rely upon this now-flawed opinion from the Eleventh Circuit to justify a denial of a role reduction in the present case. For this Court to continue to follow the flawed reasoning in the *Rodriguez De Varon*

---

[1]"Couriers, like *De Varon*, who are convicted solely of the crime of importing drugs and whose base offense levels reflect only those drugs they personally brought into this country, are not eligible for a role reduction of any kind. It will always be clear error for a district court to grant a courier a role reduction in such circumstances. *See United States v. Lampkins*, 47 F.3d 175, 181 (7th Cir. 1995)('It makes no sense to claim that one is a minor participant in one's own conduct'); *United States v. Burnett*, 66 F. 3d 137. 140 (7th Cir. 1995)('Where a courier is held accountable for only the amounts he carries, he plays a significant rather than a minor role in that offense'). This conclusion necessarily follows from the guidelines, from principles recognized in the Court's opinion in this case, and from common sense." 174 F.3d at 947 (Carnes, Concurring).

opinion would be contrary to the intent of the Sentencing Commission and Congress and would defeat the clear intent of the Sentencing Commission to increase the rate of mitigating role reductions for otherwise-qualified defendants.

In the eyes of the Sentencing Commission, the *Rodriguez De Varon* opinion has been inappropriately focusing on whether the courier or transporter of drugs was important or essential to the importation offense in determining whether to apply a mitigating role reduction. It is the Commission's clear intent that a sentencing court not focus on whether the task performed was "integral" or "essential," but, instead, to focus on the task the defendant performed in relationship to the larger conspiracy in which they were involved. This fact is clearly evidenced by the fact that the application notes now provide that "a defendant who does not have a proprietary interest in the criminal activity and who is simply paid to perform tasks should be considered for an adjustment under this guideline." *See* U.S.S.G. §2B1.2, App. N. 3.

In response to the Commission's concerns, the Sentencing Commission's amendment to the guidelines was specifically designed to address the flawed approach taken by *Rodriguez De Varon* and other courts. As noted in the legislative history of the mitigating role amendment:

> Next, the amendment addresses cases in which the defendant was 'integral' or 'indispensable' to the commission of the offense. Public comment suggested, and a review of case law confirmed, that in some cases a defendant may be denied a mitigating role adjustment solely

> because he or she was "integral" or "indispensable" to the commission of the offense. [Citations Omitted] [T]he Amendment revises the commentary to emphasize that the "the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative" and that such a defendant may receive a mitigating role adjustment, if he or she is otherwise eligible.

U.S.S.G. Appendix C, Amend. 794.

In response to the "inconsistent" and "sparse" application of the mitigating role adjustment, the amendment to the guidelines was designed specifically to "provide additional guidance to sentencing courts in determining whether a mitigating role adjustment applies." *Id*. Specifically, the amendment "addresses a circuit split and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances." *Id.* To assist courts and to encourage them to apply the adjustment more frequently, the Commission has provided sentencing courts with "a non-exhaustive list of factors for the court to consider in determining whether an adjustment applies and, if so, the amount of the adjustment." *Id.* Specifically, as noted above, the Commission's newly-created factors direct a sentencing court to consider:

(i)    the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)   the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)  the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)   the nature and the extent of the defendant's participation in the commission of the criminal activity, including acts the

> defendant performed and the responsibility and discretion the
> defendant had in performing those acts; and
>
> (v)    the degree to which the defendant stood to benefit from the
> criminal activity.

U.S.S.G §3B1.2, App. N. 3(C).

As evidenced by these enumerated factors, the Sentencing Commission is directing a sentencing court to examine the defendant's degree of understanding and participation in the larger drug trafficking conspiracy and not whether they were "essential" or "integral" to the crime for which they were being held responsible. Additionally, and of great significance to the present case, the amendment further provides that:

> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

*Id.*

As such, it is clear from the legislative history of the clarifying amendment to U.S.S.G. §2B1.2 (Mitigating Role) that *Rodriguez De Varon* and similar cases have been abrogated by the Sentencing Commission and, by Congress who passed the amendment. While the legislative history to the amendment does not specifically reference *Rodriguez De Varon*, it does specifically reference *United*

*States v. Skinner*, 690 F.3d 772, 783-784 (6th Cir. 2012); *United States v. Panaigua-Verdugo*, 537 F.3d 722, 725 (7th Cir. 2008); *United States v. Deans*, 590 F.3d 907, 910 (8th Cir. 2010); and *United States v. Carter,* 971 F.2d 597, 600 (10th Cir. 1992) -  all of which rely upon the same flawed reasoning in *Rodriguez De Varon* that if a defendant plays an critical, integral, essential, important, or indispensable role in the criminal activity, they are ineligible for a mitigating role reduction. *See* U.S.S.G. Appendix C, Amend. 794. Clearly, this approach is no longer applicable and thus this Court should not look to the *Rodriguez De Varon* opinion but the amended guideline and the factors enumerated by the Sentencing Commission for this Court's consideration.

Of further significance to the present case, in listing the factors this Court should consider when determining the applicability of a mitigating role reduction, the Commission did not reference the amount of drugs involved in the criminal activity. In contrast, in *Rodriguez De Varon*, the Eleventh Circuit relied heavily on the amount of drugs found in the courier's possession. As noted by the Court in *Rodriguez De Varon*, "because the amount of drugs in a courier's possession – whether very large or very small – may be the best indicator of the magnitude of the courier's participation in the criminal enterprise, we do not foreclose the possibility that the amount of the drugs may be dispositive in and of itself in the extreme case." *Id*. at 943. Numerous courts in this District, following the guidance

20

of *Rodriguez De Varon*, have previously denied a minor role reduction for defendants similarly-situated as Mr. Calzada, based on the large quantity of drugs found on the their vessel or in the water after the drugs had been thrown overboard by the couriers.

In 1999, the Eleventh Circuit found support for the "quantity-of-drugs" factor by pointing to an example found within an Application Note to the then-1999 version of the §2B1.2 guideline. *Id*. However, subsequent to the issuance of the *Rodriguez De Varon* opinion, the illustrative example related to the quantity of drugs in the application note was deleted from the guidelines by the Sentencing Commission in the November 1, 2001, version of the guidelines. *See* Nov. 1, 2001 §2B1.2 guideline, App. Notes generally. The removal of the illustrative "quantity of the drugs" example clearly evidences the Commission's intent that the amount of drugs involved should not be a determinative factor. In fact, this intent is further exemplified by the present version of the Guidelines, which lists five factors for a court's consideration, none of which focuses on the amount of drugs transported and certainly none of which suggests that in an extreme case the amount of drug could be determinative. As such, contrary to the assertions of the United States Probation Office, in light of the newly amended mitigating role provisions in the guidelines the *Rodriguez De Varon* opinion should no longer be relied upon by this Court in determining the eligibility for a mitigating role reduction. Instead, this

Court should turn to the factors enumerated in the November 1, 2015, guidelines, all of which support Mr. Calzada receiving a minor role reduction.

Therefore, Mr. Calzada should receive a 2-level minor role reduction and a corresponding 4-level U.S.S.G. §2D1.1(a)(5)(iii) adjustment in his base offense level. With these two corrections, Mr. Calzada'ss properly-calculated total offense level is 27.  With a total offense level of 27 and a criminal history category I, Mr. Calzada'ss advisory guideline imprisonment range is 70 - 87 months.[2]

## REQUEST FOR A REASONABLE SENTENCE

In light of the mitigating history and characteristics of Mr. Calzada as well as the facts and circumstances surrounding the non-violent nature of his offense, it is respectfully suggested that, if a §5K1.1 motion is filed in this case, a sentence of 70 months to be followed by a 5-year term of supervised release will be "sufficient but not greater than necessary" to accomplish all of the purposes of sentencing enumerated in 18 U.S.C. §3553(a). In the alternative, Mr. Calzada seeks the statutory minimum ten year penalty.

Mr. Calzada is a 25-year-old impoverished Columbian national who has two daughters and also cares for his mother. As a child, Mr. Calzada was raised with the help of his grandparents by a single mother suffering from extreme poverty.

---

[2] The Government has not yet filed a "substantial assistance" motion to eliminate the 10-year minimum mandatory penalty and authorize this Court to depart downward in Mr. Calzada's advisory guideline imprisonment range. We hope they do so by the final hearing. If this occurs, a 2-level downward departure pursuant to U.S.S.G. §5K1.1, for example, would result in an advisory range of 57 - 71 months.

Mr. Calzada has done his best to secure an education and employment, but is still unable to make more than $280 each month to support himself and his family. He therefore made a regrettable choice to seek out his childhood friend who got him a job as a deckhand transporting drugs where Mr. Calzada could make more in one trip than he would have otherwise earned in almost four years as a fisherman.

Mr. Calzada has no prior criminal history or contacts with law enforcement; he became involved in the present non-violent activity as a means to supplement his meager income and help his daughters live a better life than he had as a child. As noted above, his role in this large criminal drug trafficking conspiracy was minor in comparison to other participants in the larger drug trafficking operation.

While Mr. Calzada's offense is non-violent in nature, it cannot be disputed that he was involved with a crime involving a large quantity of cocaine, which would support the imposition of a significant term of incarceration. However, a sentence greater than 70 months' imprisonment (or ten years in the alternative) to be followed by a 5-year term of supervised release would be "greater than necessary" to address the seriousness of Mr. Calzada's criminal behavior, especially in light of his history and characteristics, his motivation for becoming involved in this unlawful activity, his mitigating role in the offense, and his cooperative efforts.

Given the significant quantity of cocaine involved in the offense it cannot be

disputed that a term of incarceration is necessary to both specifically deter Mr. Calzada and others from future similar criminal conduct. It is simply suggested that a 70-month term of federal incarceration to be followed by a 5-year term of supervised release will be equally efficient as any term of imprisonment greater than 70 months. This is true, especially in light of the fact that Mr. Calzada has never received a prior term of imprisonment and, in fact, has never previously had any contacts with law enforcement in this country or in his home country.

Mr. Calzada is mindful that he has committed a serious crime and that he needs to be punished. It is respectfully suggested that a total sentence of 70 months to be followed by a 5-year term of supervised release would provide "just punishment" for the offense, would "reflect the seriousness of the offense," and would "promote respect for the law." Additionally, such a sentence will reasonably reflect Mr. Calzada's mitigating role in this case, his cooperative efforts, his history and characteristics and will also more than adequately punish him for his non-violent, although very serious criminal activities. At the same time, such a sentence will create respect for the law in that it will illustrate that the law has appropriately considered Mr. Calzada as an individual and appropriately taken into consideration his unique human failings which mitigate his crime and his punishment.

WHEREFORE, the Defendant, JORGE ALEXIS GRUESO CALZADA, respectfully moves this Honorable Court to sustain his minor role objection, to grant the Government's "substantial assistance" motion, should one be filed, and based upon the factors enumerated in 18 U.S.C. §3553(a), to impose a total sentence no greater than 70 months of incarceration (or in the alternative ten years) to be followed by a 5-year term of supervised release.

Respectfully submitted this 23rd day of May, 2016.

DONNA LEE ELM
FEDERAL DEFENDER

*s/ Jenny L. Devine*

Jenny L. Devine
Florida Bar No. 647616
Assistant Federal Defender
400 N. Tampa Street, Suite 2700
Tampa, FL 33602-3945
Telephone: 813-228-2715
Facsimile:  813-228-2562
Email:  Jenny_Devine@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of May, 2016, a true and correct copy of the foregoing was furnished by using the CM/ECF system with the Clerk of the Court, which will send notice of the electronic filing to the following:

Matthew Perry, AUSA

s/ Jenny L. Devine

Jenny L. Devine
Assistant Federal Defender